UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| STEVEN PATRICK SWANSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:18-CV-285-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Steven Patrick Swanson ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 14. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED.**

## BACKGROUND

On September 29, 2014, Plaintiff filled an application for SSI under Title XVI of the Act, alleging disability beginning July 15, 2014 (the disability onset date), due to: paranoid schizophrenia, manic-depressive disorder, and scoliosis. Transcript (Tr.) 126-30, 149. The application was initially denied on February 24, 2015 (Tr. 55), after which Plaintiff requested an administrative hearing (Tr. 69-71). Administrative Law Judge Elizabeth Ebner (the "ALJ")

presided over a video hearing from Falls Church, Virginia, on March 23, 2017. Tr. Plaintiff appeared and testified in Buffalo, New York, and was represented by Nicole Blackwell, a non-attorney representative. Tr. 10, 24-54. William T. Cody, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on May 2, 2017, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. Tr. 10-20. On December 27, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's May 2, 2017 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in her May 2, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since September 29, 2014, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: scoliosis, depression, anxiety, substance induced schizophrenia and polysubstance abuse (marijuana) (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c)[1] except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; only occasional exposure to vibration; limited to simple repetitive and routine tasks, but not at assembly line pace; limited to simple work related decisions; only occasional changes in the workplace; and only occasional interactions with supervisor, co-workers, and the public;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on February 10, 1989 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 29, 2014, the date the application was filed (20 CFR 416.920(g)).

Tr. 10-19.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on September 29, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 19.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ failed to properly develop the record with respect to Plaintiff's mental health counseling and drug counseling treatment at Horizon Corporation ("Horizon"). *See* ECF No. 11-1 at 9. According to Plaintiff, Horizon provided no counseling records—only medication management records—and the actual counseling records were necessary for the ALJ to fully evaluate Plaintiff's mental impairments. *See id.* Next, Plaintiff asserts that the ALJ failed to properly find his schizophrenia to be a severe impairment, separate from the ALJ's finding that Plaintiff had substance-induced schizophrenia. *See id.* at 11-16. In his second point of error, Plaintiff also takes issue with the ALJ's assessment of Plaintiff's subjective complaints, suggesting that the ALJ's assessment of Plaintiff's impairments was colored by her personal view of Plaintiff's substance use. *See id.* at 16.

The Commissioner responds that substantial evidence supports the ALJ's finding regarding Plaintiff's severe impairments, and the ALJ fully developed the record with respect to Plaintiff's counseling treatment. *See* ECF No. 14-1 at 12-26. A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record and properly evaluated Plaintiff's severe impairments, and she formulated Plaintiff's RFC based on the record as a whole. As discussed below, substantial evidence supports the ALJ's finding that Plaintiff had severe drug-induced schizophrenia. In addition, the ALJ properly considered Plaintiff's schizophrenia and its effect on Plaintiff's functioning. No medical source opined that Plaintiff was further limited by schizophrenia than the ALJ found in her RFC finding. With respect to Plaintiff's assertion that the ALJ failed to fully develop the record, the record reflects that the ALJ obtained Plaintiff's counseling records through February 2017, and there is no evidence that any further counseling records were available to be considered. Furthermore, the ALJ considered and afforded great weight to the opinions of two mental health providers that Plaintiff had only mild to moderate cognitive limitations. Based on the foregoing, the ALJ properly found that Plaintiff retained the ability to perform medium level work,

Plaintiff was admitted to the Erie County Medical Center ("ECMC") from August 18, 2014 through August 25, 2014, after having a "panic attack" during an argument with his parents. Tr. 172, 176. The discharge report states that Plaintiff was "psychotic and drug-seeking." Tr. 173. His discharge diagnosis was "schizophrenia, history of polysubstance abuse. *Id.*

Shortly thereafter, in September 2014, Plaintiff underwent a psychiatric evaluation with Meliton Tanhehco, M.D. ("Dr. Tanhehco"), at North Towns Mental Health Clinic. Tr. 189. Dr. Tanhehco diagnosed schizophrenia and noted Plaintiff's history of polysubstance abuse and "substance-induced psychosis." Tr. 190. Plaintiff returned to see Dr. Tanhehco in October 2014. Tr. 194. He reported some improvement but stated he continued to have hallucinations. *Id.* Plaintiff

returned to Dr. Tanhehco in February 2015 and reported that he was looking for a job. Tr. 259. In March 2015, Plaintiff reported that his parents no longer wanted him in the home because he wasn't doing much of anything except helping with chores. Tr. 260. He also reported that he was not experiencing any hallucinations or paranoia. *Id*.

On January 23, 2015, Plaintiff was evaluated by consultative psychiatric examiner Janine Ippolito, Psy. D. ("Dr. Ippolito"), in connection with his Social Security claim. Tr. 200. Plaintiff alleged he was unable to work due to paranoid schizophrenia and scoliosis. *Id*.  On examination, Dr. Ippolito found that Plaintiff related adequately but his appearance was disheveled, and his affect was restricted. Tr. 201-02. Plaintiff's thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia; his attention, concentration, and recent and remote memory skills were intact; and his intellectual functioning appeared average. Tr. 202. Plaintiff told Dr. Ippolito that he was able to cook, clean, do laundry, and grocery shop. *Id*. He stated he did not drive because he had no car, but was capable of using public transportation, if necessary. Tr. 202-03. Plaintiff reported that he regularly interacts with friends, plays video games, and watches television. Tr. 203.

Dr. Ippolito diagnosed Plaintiff with: (1) "unspecified schizophrenia disorder, rule out substance induced;" (2) "alcohol dependence/abuse, in partial remission, by report;" and (3) "marijuana dependence/abuse, in partial remission, by report." Tr. 203. Dr. Ippolito found that Plaintiff had moderate limitations in dealing with stress and making appropriate decisions which did not prevent him from following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, and relating adequately with others. *Id*.

On the same day, consultative examiner Hongbiao Liu, M.D. ("Dr. Liu"), evaluated Plaintiff's physical condition. Tr. 206. Plaintiff reported that he had scoliosis and chronic neck and low back pain for the past seven years, but he denied obtaining physical or chiropractic therapy for his conditions. *Id*. Plaintiff reported he cooked and cleaned the house daily, did laundry twice a week, shopped once a week, watched television, listened to the radio, played sports, and socialized with friends. *Id*. On examination, Plaintiff appeared in no acute distress; his gait was normal; and he could walk on heels and toes with mild difficulty due to low back pain. Tr. 207. He could squat to 95 % of full due to back pain; his stance was normal; he needed no help changing for the examination or getting on and off the examination table; and he could rise from a chair without difficulty. *Id*. Plaintiff's cervical, thoracic, and lumbar spine had full range of motion, as did his shoulders, elbows, forearms, wrists, hips, knees, and ankles. Tr. 208. Straight leg raise testing was negative; Plaintiff's joints were stable and non- tender; he had no sensory deficit; and his strength was full in his extremities. *Id*. Dr. Liu indicated that Plaintiff would have mild limitation for prolonged walking, bending, and kneeling. *Id*.

In February 2016 Plaintiff had a mental health assessment with Tawni A. Frank, M.D. ("Dr. Frank"), at the Erie County Medical Center Corporation ("ECMCC"). Tr. 321. Plaintiff reported that he was trying to prevent a paranoid, psychotic episode, as he was under increased stress because he lost his job and his parents asked him to move out. Tr. 321. Plaintiff displayed no paranoia in the interview with Dr. Frank and subsequently admitted that he had a new job beginning in two weeks and wanted a voluntary admission in the interim so he would have a place to stay and use the computer. *Id*. Dr. Frank noted that Plaintiff had been hospitalized several times in a paranoid state, but he was heavily dependent on drugs each time. *Id*. Dr. Frank also noted that: Plaintiff had been referred to Spectrum mental health in 2014, but he refused substance use

treatment; he attended therapy in a "hit or miss" fashion for eight months; and he quit because he was about to get kicked out for a "dirty urine." Tr. 321. Dr. Frank found no evidence of depression, psychosis, or mania, and referred Plaintiff for mental health treatment. Tr. 323. Plaintiff returned to ECMCC in August 2016 and reported that he had not followed through with any of his provider's recommendations. Tr. 273.

Plaintiff began treatment at Horizon in October 2016. Tr. 295. In a diagnostic evaluation note dated October 26, 2016, Adrienne Roy ("Ms. Roy"), a nurse practitioner at Horizon, noted that Plaintiff had a history of paranoid schizophrenia and depression. *Id*. Plaintiff reported he was back on his medications in the past four months after not taking any medication for a year. *Id*. He obtained his medications from his primary care provider at ECMCC. *Id*. During the examination, Plaintiff did not exhibit any psychosis but exhibited depression and anxiety. Tr. 298. Plaintiff sought medication for ADHD to help him focus, but he was advised that he needed to decrease his cannabis use before his medications could be adjusted. *Id*.  In February 2017, Ms. Roy noted that Plaintiff continued to use his medication and reported that he "fe[lt] great." Tr. 311. He said he was helping his mother after she came home from rehabilitation. *Id*.

On March 9, 2017, LMSW Debra Deebler[2] (Ms. Deebler") provided a medical source statement. Tr. 317-19. She opined that Plaintiff had moderate limitations in following complex instructions, but he had only mild limitations in understanding, remembering, and following simple instructions, and making judgments on simple work-related decisions. Tr. 317. In addition, she found that Plaintiff's anxiety and marijuana use impacted his functioning in this area. *Id*. She further opined that Plaintiff had moderate limitations in interacting appropriately with supervisors, co-workers, and the public, as well as responding to changes in the work setting. Tr. 318. Ms.

---

[2] Sometimes referred to in the briefs as "Ms. Deebles."

Deebler noted that Plaintiff was a routine marijuana user, but she also stated that, "substance use aside," Plaintiff presented with symptoms of depression and anxiety, which impacted his functioning. *Id.*

In his first point of error, Plaintiff asserts that the ALJ erred by failing to obtain further records from Horizon in light of Plaintiff's testimony that he was in bi-weekly mental health counseling and weekly drug counseling at Horizon. *See* ECF No. 11-1 at 9-10. Plaintiff asserts that the reports submitted from Horizon (Tr. 293-315) were only for Plaintiff's medication management and did not include actual therapy records, and as such, the ALJ did not fully develop the record. *See* ECF No. 11-1 at 9-10. First, although the ALJ recounted Plaintiff's testimony regarding the frequency of his counseling sessions, the ALJ did not indicate that she was giving Plaintiff's testimony any particular credit. Tr. 15. Notably, Plaintiff had a history of noncompliance with treatment. *See, e.g.*, Tr. 273, 321. Second, other than Plaintiff's unsupported assertion, there is no indication that there are additional reports available from Horizon. Plaintiff's representative reported at the hearing that she had no additional evidence to submit, and she did not ask the ALJ to leave the record open after the hearing to provide missing records reports. Tr. 10, 26. Even now, Plaintiff's attorneys have not provided any reports from Horizon to demonstrate that there were indeed records available from the relevant time period that the ALJ did not have already in the record.

Nonetheless, reports from Plaintiff's records from Horizon revealed more than just medication management. *See* Tr. 293-315. In fact, a number of these reports were identified as "diagnostic evaluation notes," and even those identified as medication management notes also reported more than just medication management information. Tr. 293-315. As discussed by the ALJ, Plaintiff told Ms. Roy in February 2017 that he felt great and wanted to continue with his

medication, and he had been taking care of his mother who was home from rehabilitation after a car accident. Tr. 17-18, 311.

Plaintiff argues that since Ms. Deebler provided a medical source statement (Tr. 317-19), this supports the conclusion that she also provided treatment. *See* ECF No. 11-1 at 9. Plaintiff's argument fails.  On the contrary, Ms. Deebler's statement does not indicate that she provided Plaintiff treatment, and in fact, Ms. Deebler was the individual who faxed records from Horizon to Plaintiff's representative, including the completed medical source statement. It would be curious indeed for Ms. Deebler to omit her own reports when Plaintiff's representative requested all clinical notes, individual sessions, status update reports, and assessments from 2016 to present. Tr. 287.

Moreover, even if some counseling session records are missing, Plaintiff has not demonstrated that these records provided additional information not available to the ALJ. Horizon provided the ALJ with reports regarding Plaintiff's treatment, including the last treatment note from February 2017, where Plaintiff reported he was feeling great and helping his mom after she came home from rehabilitation. Tr. 17, 311. Furthermore, the ALJ had opinions from both Dr. Ippolito and Ms. Deebler that Plaintiff had no more than moderate cognitive limitations in some areas of functioning which did not prevent him from following simple instructions, maintaining attention and concentration, maintaining a regular schedule, and relating adequately with others. Tr. 203, 317-18. The ALJ gave both opinions great weight. Tr. 16-17.

Based on the foregoing, there were no "obvious gaps" in the record, and the ALJ had substantial evidence to support her findings regarding Plaintiff's cognitive functioning. *Peterson v. Berryhill*, 2018 WL 4232896 *4 (W.D.N.Y. 2018) (citing *Tatelman v. Colvin*, 296 F.Supp.3d 608, 612 (W.D.N.Y. 2017) (The ALJ's duty to develop the record is not infinite. When evidence

in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary.); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (The ALJ was not required to further develop the record by seeking additional medical records where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability" *Rosa v. Callahan*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim").

In his second point of error, Plaintiff argues the ALJ erred in finding drug-induced schizophrenia to be a severe impairment but not finding schizophrenia to be a severe impairment independent from drug-induced schizophrenia. *See* ECF No. 11-1 at 11-16. Plaintiff asserts that because his doctors diagnosed him with schizophrenia, but not drug-induced schizophrenia, the ALJ relied on her own lay opinion in making this finding. *Id.* at 11-13. Plaintiff's argument is meritless. Despite Plaintiff's assertion that there are differences between these two diagnoses, none of the medical source opinions support his assertion, and there is no evidence to support a finding that Plaintiff was limited differently regardless of whether the ALJ found his impairment was drug-induced schizophrenia or just schizophrenia. Tr. 172, 190, 203, 282.

As the ALJ discussed, Plaintiff's providers were unsure if his schizophrenia was induced from his drug use. Tr. 18. In August 2014, Dr. Tanhehco diagnosed Plaintiff with schizophrenia and noted "substance-induced psychosis history." Tr. 16, 190. Dr. Frank also indicated that Plaintiff was hospitalized in a paranoid state "but he was heavily dependent on drugs each time." Tr. 321. In 2015, Dr. Ippolito evaluated Plaintiff and diagnosed him with unspecified schizophrenia, rule out substance induced. Tr. 16, 203. Ms. Deebler reported that Plaintiff's marijuana use affected his functioning. Tr. 17, 317.

Based on the foregoing, Plaintiff has not shown that the ALJ improperly relied on her own lay analysis to determine Plaintiff's severe impairments. Instead, the ALJ's analysis reflects that she reached her determination after reviewing the entirety of the record, including the medical opinion evidence, as she is required to do. Tr. 12-18. *See* 20 C.F.R. §§ 416.945-46. While the ALJ uses medical sources to provide evidence, including opinions, on the nature and severity of a claimant's impairment(s), the final responsibility for deciding severity is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). In this case, the ALJ considered Plaintiff's schizophrenia limitations, whether they were drug induced or not, and relied upon the opinions of Plaintiff's medical providers as to the limitations his schizophrenia caused. Tr. 16-17, 203, 317-18.

In addition, Plaintiff is ultimately responsible for providing evidence to support his claim of disability. *See* 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. §§ 416.912(c) ("you must provide medical evidence showing that you have an impairment(s) and how severe it is"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about h[er] medical condition, to do so."); *see also Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 (2d Cir. 2014) ("A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'") (citation and quotation marks omitted). Plaintiff has not met this burden.

Plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence. *See* ECF No. 11-1 at 14-16. Specifically, Plaintiff objects to the ALJ's assessment of Plaintiff's

subjective complaints and her consideration of Plaintiff's conservative treatment, improvement with treatment, activities of daily living, part-time work, and the medical opinion evidence to conclude that Plaintiff had the RFC for medium work with certain additional limitations. Tr. 12-18. *See* 20 C.F.R. § 404.1529 ("We also consider the medical opinions of your treating source and other medical opinions."); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record").

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner).

Furthermore, it is the claimant's burden, not the Commissioner's, to demonstrate the functional limitations he claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof); *Lesterhuis v. Colvin*,

805 F.3d 83, 87 (2d Cir. 2015) (citations omitted) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought."); *Parker v. Berryhill*, No. 17-CV-252-FPG, 2018 WL 4111191, at \*4 (W.D.N.Y. Aug. 29, 2018) (holding that a plaintiff bears the burden of showing her RFC is more limited than that found by the ALJ) (citations omitted).

In this case, the ALJ found Plaintiff's allegations of disability were inconsistent with his conservative treatment, medication effectiveness, lack of medication side effects, activities of daily living, ability to work part-time, and the medical opinion evidence. Tr. 14-18. *See* 20 C.F.R. § 416.929; SSR 16-3p. Review of an ALJ's subjective symptom evaluation is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (Because it is the function of the Commissioner and not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination as long as it is supported by substantial evidence).

The ALJ discussed that Plaintiff's medical providers had generally treated Plaintiff conservatively. Tr. 18. Although Plaintiff was hospitalized for a panic attack in August 2014, he was not hospitalized after that time, and since that time, Plaintiff's providers had treated him conservatively, with medication. Tr. 18, 295, 303, 311. Conservative treatment is inconsistent with a claimant's allegations of a disabling condition. *See Mayor v. Colvin*, No. 15 CIV. 0344 (AJP), 2015 WL 9166119, at \*22 n. 29 (S.D.N.Y. Dec. 17, 2015) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record"); *see also Shaffer v. Colvin*, No.

1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015); *Rivera v. Colvin*, No. 1:14–CV–00816 (MAT), 2015 WL 6142860, *6 (W.D.N.Y. Oct. 19, 2015).

The ALJ also discussed Plaintiff's medications and noted that there was no indication that medications had not been effective in alleviating Plaintiff's symptoms, or that his medications caused any side effects which prevented Plaintiff from functioning within the limitations of his assessed RFC. Tr. 14, 40-41. As part of her subjective symptom evaluation, the ALJ may consider a "record of any treatment and its success or failure, including any side effects of medications." *See* SSR 16-3p. Plaintiff asserts that the ALJ failed to consider that his noncompliance in taking his prescribed medication was a symptom of his mental illness. *See* ECF No. 11-1 at 14-15. Contrary to Plaintiff's assertion, the ALJ did not determine that Plaintiff's allegations were inconsistent with his failure to take his medications as prescribed. Instead, she found that while Plaintiff admitted that at times he had not taken his medication and his symptoms worsened, overall, the evidence did not reveal that his medications were ineffective in alleviating his symptoms. Tr. 14, 17-18, 40-41, 273, 295, 311). And, as noted above, in February 2017, Plaintiff reported he was doing much better and his medications improved his condition. Tr. 18, 311. It is proper for the ALJ to consider a claimant's improvement with treatment in concluding claimant not disabled. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013); *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)).

With respect to Plaintiff's assertion that the ALJ appeared to imply that if Plaintiff had been prescribed marijuana by his doctors, his substance use would not have been a problem (*see* ECF No. 11-1 at 15-16), Plaintiff mischaracterizes the ALJ's statement. The ALJ merely observed

that Plaintiff reported that marijuana helped ease his mental and physical symptoms even though his providers had not prescribed it to him. Tr. 18, 39-40.

The ALJ also noted that Plaintiff worked part-time from 2015 through early 2016 as a food preparer and left only because of a misunderstanding with his boss. Tr. 18, 29-30. *See Rivers v. Astrue*, 280 F.App'x 20, 23 (2d Cir. May 28, 2008) (noting that while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, that he worked at levels consistent with light work.). The ALJ also appropriately considered Plaintiff's reported activities in concluding that his subjective allegations of disabling limitations were not fully supported by the overall record in this case. Tr. 18. Plaintiff reported that he visited his friends daily to play video games, watch movies, and play sports, and he cared for his mother by helping her with her medication and cooking her meals, as well as cleaning and doing the laundry. Tr. 18, 29, 45, 206, 311. Despite his allegations of back pain, he admitted he could lift 50 pounds, which is the requirement to perform medium work. Tr. 18, 44. Inconsistencies in the evidence, including a claimant's activities, can undermine a claimant's allegations of disabling limitations. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may reject Plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability.); *Wolfe v. Comm'r of Soc. Sec.*, 272 F.App'x 21, 22 (2d Cir. Apr. 1, 2008) (ALJ properly discounted claimant's credibility based on her statements that she attended church, shopped, and attended weekly football games); *Donnelly v. Barnhart*, 105 F.App'x 306, 308 (2d Cir. Jul. 1, 2004) (ALJ properly discounted credibility based on statements that claimant cooked dinner, folded clothes, and sewed).

Finally, as discussed above, the ALJ considered the medical opinion evidence, including the opinions of Dr. Liu, Dr. Ippolito, and Ms. Deebler. Tr. 16-17. The ALJ gave some weight to the opinion of Dr. Liu, who found that Plaintiff had only mild limitations in walking, bending, and

kneeling. Tr. 16, 208. She also gave great weight to the opinion of Dr. Ippolito, who found that Plaintiff had moderate limitations in dealing with stress and making appropriate decisions which did not prevent him from following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, and relating adequately with others. Tr. 16, 203. The ALJ properly gave significant weight to these medical provider's opinions because their opinions were consistent with substantial other evidence of record. Tr. 16-17. *See* 20 C.F.R. § 416.927(c); *Frye ex rel. A.O. v. Astrue*, 485 F.App'x 484, 487 (2d Cir. Jun. 13, 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record").

Although Plaintiff claims the ALJ faulted Ms. Deebler for not explaining how Plaintiff's marijuana use affected his functioning (*see* ECF No. 11-1 at 11), the ALJ merely found it noteworthy that Ms. Deebler did not explain how Plaintiff's marijuana use affected his functioning, given that her opinion was not specifically based on Plaintiff's marijuana use. Tr. 17, 317-18. In any event, the ALJ did not use this as a reason to discount Ms. Deebler's opinion; rather, the ALJ gave the opinion great weight because Ms. Deebler's findings were consistent with Plaintiff's improvement with treatment and his activities of daily living, as well as his improved condition in 2017, despite his continued use of marijuana. Tr. 17, 29, 39-40, 206, 311. In sum, the ALJ properly discussed Plaintiff's subjective symptoms and explained why she did not find Plaintiff's allegations entirely consistent with the medical and other evidence. Tr. 12-18.

Based on the foregoing, the ALJ's RFC was supported by substantial evidence of record. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly

erroneous standard. The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise"). Although Plaintiff may disagree with the ALJ's weighing of the evidence, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ discussed the medical opinion evidence, set forth the reasoning for the weight afforded to each opinion, and cited and discussed specific evidence in the record that supported her determination. Accordingly, the ALJ discharged her duty to formulate an RFC finding that properly accounted for all of Plaintiff's credible limitations, as supported by the record.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE